St. Louis, Iron Mountain & Southern Railway Company
*v.* Love.

Opinion delivered March 18, 1905.

1. RAILROAD—MECHANICS' LIEN—NON-RESIDENT CONTRACTOR.—While a non-resident contractor who is the primary debtor of one claiming a mechanics' lien against a railroad company is a necessary party to a suit to enforce such lien, it is not essential that there should be a personal judgment against him, it being sufficient if he be brought into court by warning order merely. (Page 530.)

2. STATUTE OF LIMITATIONS—COMMENCEMENT OF SUIT.—Where, on a certain date, the original complaint was withdrawn, and an amended complaint substituted, the record failing to show when the original complaint was filed, the suit for the purpose of the statute of limitations, will be treated as commenced on the date of the filing of the amended complaint. (Page 532.)

3. SAME—DIVISIBLE ACCOUNTS.—Where several accounts sued on were divisible, and the several rights of action thereon accrued at different times, they were severally barred at the end of one year from such accrual. (Page 532.)

4. MECHANICS' LIEN—FOREMAN.—The services of a foreman who superintends and directs laborers in the work of construction or repair of a railroad falls within the terms of Kirby's Digest, § 6661, giving the "laborer or other person who shall perform work or labor" a lien for his services. (Page 533.)

5.  SAME—EJUSDEM GENERIS.—Under Kirby's Digest, § 6661, providing a
    lien in favor of one who shall "furnish any materials, machinery, fix-
    tures or other things toward the building, construction or equipment
    of any railroad," the words "or other things" have reference to
    things furnished similar to those denoted by the preceding words, and
    do not include the hire of teams furnished by the claimant to a
    sub-contractor for use in repairing a railroad. (Page 534.)

Appeal from Jefferson Circuit Court.

ANTONIO B. GRACE, Judge.

Reversed.

### STATEMENT BY THE COURT.

Appellee sued J. E. Lyman and appellant railway company
to recover for work done for and materials furnished to said
Lyman under contract between Lyman and the railway company
in repairing and rebuilding certain parts of its roadbed, and to
enforce a lien upon the property of the appellant company, as
provided by law.

The complaint sets forth accounts for labor alleged to have
been performed and material furnished during the months of
September and October, 1900, at Tuckerman, Arkansas, show-
ing balance of $8,204.15 unpaid, exclusive of interest, and during
the months of October and November, 1900, at Grand Glaize,
Arkansas, showing a balance of $203.05 unpaid, and during the
months of November and December, 1900, and January, Febru-
ary and March, 1901, at Redfield, Arkansas, showing a balance
of $498.75 unpaid, and during the months of July, August and
September, 1901, at Jefferson Springs, Arkansas, showing balance
of $350.27 unpaid. Separate itemized accounts are exhibited,
showing said respective balances, and the complaint further
alleges that payments were made by Lyman to the plaintiff of
$314.12 in April, May and June, 1901, in excess of the payments
for work done during those months, and the sum of $107 paid on
November 7, 1901.

The cause was tried before the court, sitting as a jury, and
there was a finding by the court in favor of the plaintiff in
the sum of $889.44, and judgment was rendered fixing said

amount due plaintiff and declaring that amount a lien upon the roadbed, buildings, equipments, etc., of appellant. Lyman was not personally served with summons, but was constructively summoned as a non-resident of the State by publication of warning order, and an attorney was appointed to defend for him, and said attorney made report.

The plaintiff testified that he was employed by Lyman as foreman of construction at a salary of $75 per month, and worked for him in that capacity while Lyman was performing his contract with appellant in rebuilding and repairing its road, and also that he furnished teams for said work.

The items charged in said accounts are for salary of plaintiff as foreman at $75 per month, and hire of teams at $3.50 per day, and for cash used in operating expenses of the contractor Lyman.

Appellant filed its answer, denying all the material allegations of the complaint, and also pleaded the statute of limitations.

*B. S. Johnson,* for appellant.

No lien existed until proper steps were taken after rendition of judgment against the contractor. Kirby's Dig. § § 6661-6663; 59 Ark. 85; 43 Minn. 449; 51 Mich. 573; Phillips, Mech. Liens, § § 397-399; 2 Col. App. 385; 4 *Id.* 166; 2 *Id.* 381; 73 Ga. 323; 71 Ia. 394; 109 N. C. 663; 25 Mo. 599; 28 Mo. 77; 40 Mo. 146; 4 Mo. App. 574; 6 *Id.* 25; 29 *Id.* 479; 45 *Id.* 288. The articles named in the bill of particulars were not a part of the railroad or any structure of the defendant, and were not a lien upon the railroad of the appellant. 71 Ark. 126; 42 Fed. 475; 65 Md. 99; 3 Elliott, Railroads, § 1068; 65 Ark. 183; 59 Ark. 81.

*White & Altheimer,* for appellee.

Appellant is liable. 51 Ark. 308; 59 Ark. 82; 70 Ark. 262; Kirby's Digest, § 6661; 57 Ark. 49; 49 Ark. 478; 30 Ark. 28.

McCULLOCH, J., (after stating the facts.) 1. Appellant contends that the court erred in declaring a lien against its property before there had been a personal judgment rendered against

the contractor who was the principal debtor of the plaintiff. No personal judgment was rendered against Lyman, but the amount due was ascertained, and the same was declared a lien.

The statute regulating the enforcement of liens upon the property of railroad companies reads as follows:

"The said liens shall be mentioned in the judgment rendered for claimant in the ordinary suit for the claim, or in any order of court allowing such claim as a just charge against any railroad in the hands of a receiver, and said lien may be enforced by ordinary levy and sale under final or other process at law or equity." Kirby's Dig. § 6663.

The statute (Kirby's Dig. § 6661) confers a lien on the property of the railroad when the railroad is the primary debtor, and also for labor performed or material furnished, when a contractor or sub-contractor is the primary debtor of the claimant, and the section of the statute above quoted regulates the enforcement of the lien, whether the railroad itself or the contractor be the primary debtor. It is clear that, where a contractor or sub-contractor is the primary debtor, the suit should be against him to establish the liability, and not against the railroad company primarily. They may both be joined in the suit, the contractor so that the debt may be established against him, and the railroad company so that the lien therefor may be adjudged against its property; but it does not follow that a personal judgment must be rendered against the contractor before a lien can be declared against the railroad company. If the primary debtor be a non-resident, as in this case, he may be brought into the suit by constructive service of process; and, though no personal judgment can be rendered against him, the amount of the debt can be ascertained and adjudicated for the purpose of enforcing the lien, and such adjudication is binding upon him in any future settlement between the parties. Any other conclusion would nullify the statute, in many instances, by a denial of a remedy for the enforcement of the lien because of the non-residence of the contractor.

We think that the many authorities cited by learned counsel for appellant establish no more than that the contractor must be a party to the suit to enforce the lien, so that he may be bound

by the adjudication. They do not hold that a personal judgment against him is essential. *Murdock* v. *Hillyer,* 45 Mo. App. 287; *Steinman* v. *Strimple,* 29 Mo. App. 478.

2. The statute provides that suit to enforce the lien must be brought "within one year after said claim shall have accrued." The record here does not disclose the date of the commencement of the suit, as the original complaint was withdrawn, and the amended complaint substituted · on May 26, 1902. We must, therefore, for the purpose of testing the plea of limitation, treat the suit as commenced on the above date when the amended complaint was filed.

So treating it, the accounts for work done more than one year prior to that date are barred. The several accounts were divisible, and the several rights of action thereon accrued, in the absence of any proof to the contrary, as the work was performed, and were barred at the end of one year from such accrual. *McNeil* v. *Garland,* 27 Ark. 343. Therefore, the items on all the accounts sued on, except the last showing a balance of $350.17, were barred by limitation at the time of the commencement of this suit, and no recovery can be had thereon.

3. This brings us to the inquiry whether the account not barred by limitation contains charges for which the appellee is entitled to a lien against the property of appellant. The section of the statute in question is divisible into three separate parts, each giving a lien under different circumstances. The first part, to which alone we can look to find authority to declare a lien in this case, reads as follows: "Every mechanic, contractor, subcontractor, builder, artisan, workman, laborer or other person who shall do or perform any work or labor or cause to be done or performed any work or labor upon, or furnish any materials, machinery, fixtures or other things toward the building, construction or equipment of any railroad, or to facilitating the operation of any railroad, whether completed or not, and every person who performs work of any kind in the construction or repair of any railroad, whether under contract with the railroad or with a contractor or sub-contractor thereof, * · * * shall have a lien," etc. (Kirby's Dig. § 6661.) The other parts of the statute relate only to services performed and things furnished

under contract directly with the railroad company or its employees, and have no application to this case, as the plaintiff's transactions were entirely with a sub-contractor, and not with the railroad company or its employees. It will be seen that the above-quoted part of the statute gives a lien (1) to the mechanic or laborer for his work upon the railroad, whether performed under contract with the contractor or sub-contractor, or directly with the railroad company; (2) to the contractor or sub-contractor who causes such work to be performed by others; and (3) to any person who furnishes material which enters into the construction, equipment or repair of the railroad, whether furnished to the contractor or sub-contractor, or directly to the railroad company.

We think that the services of a foreman who superintends and directs the laborers in the work of construction or repair falls fairly within the terms of the statute giving the "laborer or other person who shall perform work or labor" a lien for his services. Phillips on Liens, § 158; *Stryker* v. *Cassidy,* 76 N. Y. 50; *Mut. Ben. Assn.* v. *Rowand,* 26 N. J. Eq. 389. There is a direct physical connection between his service and the work of the laborer who wields the ax, plow or scraper, and the one entered, as much as the other, into the construction of the railroad. This does not apply to one who merely renders service to the contractor or sub-contractor in aid of the performance of the contract, and not directly connected with and forming a part of the labor of construction. In *St. Louis & N. Ark. Rd. Co.* v. *Rogers,* 72 Ark. 270, it was held that one who was employed by the contractor to keep his accounts and the time of the laborers, to look after the livestock of the contractor, and to set up camp and build shanties for the laborers to live in, did not have a lien for his services. The distinction between the services performed in that case and in this is well marked, and our conclusion in this case does not conflict with the construction placed upon the statute in the former case. The circuit judge was, therefore, right in holding that the plaintiff was entitled to a lien for so much of the account as was for services performed by him as foreman while directing the work of the laborers. He would not be entitled to a lien for this service while performing other

duties for his employer, the sub-contractor, such as bookkeeping or general management of the business.

The next and most important item in the account is that for hire of teams furnished by plaintiff to his employer, the sub-contractor, for use in repairing the roadbed; and the validity of his claim of lien therefor depends upon a solution of the question whether or not it falls within the words "any material, machinery, fixtures or other things," used in the statute, and whether it entered into the construction, equipment or repair of the railroad. The words "or other things," according to established rules of construction, have reference to things furnished similar to those denoted by the preceding words, and do not enlarge the class or character of things designated by the preceding words. *Eastern-Arkansas Hedge Fence Co.* v. *Tanner,* 67 Ark. 156. It seems clear that the words "material, machinery, fixtures or other things" of that kind cannot, by any sort of stretch, be construed to include the use of teams furnished to the contractor, nor that the use of same is material or other thing entering into the construction or repair of the road. This feature of the statute is designed to give a lien for material and other things which enter into and form a part of the railroad, and not merely material, tools or supplies furnished to the contractor as a part of his equipment and "plant" to aid him in the performance of his contract. It is the duty of the contractor to supply himself with these things, and no lien is given by the statute to one who furnishes the same to him. Another portion of the statute gives a lien to one who furnishes "board, provisions or supplies for any employees or teams" of the railroad company, but none is given to one who furnishes such things to the contractor.

We do not overlook the line of authorities where some articles, such as powder furnished for blasting, are held to be material used in construction, for which a lien is given. *Rapanno Chem. Co.* v. *Greenfield & N. Ry. Co.* 59 Mo. App. 6; *Giant Powder Co.* v. *Oregon & P. Ry. Co.* 42 Fed. 470. In such instance the article so furnished is held to be material used in construction, notwithstanding the fact that it is consumed in the use, and none of it remains to form a part of the completed structure. And those authorities distinctly recognize the differ-

ence between material furnished for use, and which are used in construction, and those which are furnished to the contractor as a part of his equipment for work under the contract. *Giant Powder Co.* v. *Ry. supra.*

Nor have we overlooked the decision of this court in *Klondike Lumber Co.* v. *Williams,* 71 Ark. 334, where it is held that the lien of a laborer includes the value of the use of his team when actually driven by him in performing the work. That decision proceeds correctly upon the theory that the use of the team or tools by the laborer in his work enters into and becomes a part of his own labor. "For in such case," says the court, "the labor of one who uses a wagon and team or other instrumentality furnished by himself in the performance of his work, includes both the work of himself and that of the instrumentality by which he performs it, and he has a lien for the value of all his labor. *Martin* v. *Wakefield,* 42 Minn. 176; *Hale* v. *Brown,* 59 N. H. 551."

In *Choctaw & Memphis Ry. Co.* v. *Speer Hardware Co.,* 71 Ark. 126, where a lien was asserted for articles furnished to a sub-contractor, some of which were furnished before and some after the passage of the act, and some of which articles consisted of "rope, block and tackle, chains, wheelbarrows, wedges, axes, blacksmith's outfit, such as forges, anvils and tools, and sundry steel and tools such as are usually used in quarrying stone," the court said: "The statute neither in terms nor by necessary implication creates a lien in favor of one not in privity of contract with the railroad company for anything beyond that which has entered into and becomes a part of the railroad." This rule is supported by reason and by abundant authority. 3 Elliott, Railroads, § 1068; *Basshor* v. *Baltimore & O. Rd. Co.* 65 Md. 99; *Gordon Hdw. Co.* v. *San Francisco & S. R. Rd. Co.* 86 Cal. 620.

There is still less ground in the statute to declare a lien for money or other supplies furnished to the contractor or sub-contractor. Statutes of this character must be strictly construed, to the extent of the ascertainment of parties and the nature of the debt for which a lien is claimed, though, when thus ascertained, the remedial features are to be liberally construed.

Before a lien can be declared, it must fall fairly within the term of the statute. *Tucker* v. *Ry. Co.* 59 Ark. 82; *Buckley* v. *Taylor,* 51 Ark. 302; *Van Etten* v. *Cook,* 54 Ark. 522; *Flournoy* v. *Shelton,* 43 Ark. 168.

Placing even the most liberal construction upon the statute, words cannot be found therein which will justify the conclusion that a lien is given for supplies, money or teams furnished to a contractor or sub-contractor, unless such supplies are material which enters into and becomes part of the railroad. If a lien therefor is to be given, it must yet be declared by the Legislature, as we find nothing in the present statute to warrant such a conclusion.

The judgment is reversed, and the cause remanded for a new trial.