ROGERS PAVING IMPROVEMENT DISTRICT No. 13 *v.* SWOFFORD.

4-4457

Opinion delivered December 7, 1936.

*Claude M. Williams* and *Vol T. Lindsey,* for appellants.

*Duty & Duty* and *W. N. Ivie,* for appellees.

MEHAFFY, J. This action was begun in the Benton chancery court by J. L. Swofford against the Rogers Paving Improvement District No. 13. Swofford alleged in his complaint that the district was indebted to him in the sum of $117.50 for work and labor performed for said district, which was due and unpaid. He asked for judgment, and asked that a receiver be appointed to take charge of all of the assets, books, papers, records, and affairs of the paving district.

The paving district filed an answer admitting the allegations in the complaint, and agreed to the appointment of a receiver. Thereafter the paving district filed an answer denying any indebtedness to Swofford, and the court, after hearing the evidence, found in favor of Swofford, and we cannot say that the finding of the court on this issue was against the preponderance of the evidence. The decree of the chancery court in favor of Swofford is affirmed.

The court appointed E. G. Sharp as receiver, and he took charge of the assets of the paving district. Thereafter numerous parties intervened, some of them asking to be made plaintiffs, and others, defendants, but we do not deem it necessary to set out the pleadings of these parties.

Act 79 of the Acts of the Legislature of 1933 provided the manner and procedure for collecting improvement district taxes, and among other things provided that the collection of the taxes might be enforced by mandamus or by mandatory injunction in equity, and that the remedies provided in the act should be exclusive.

It also provided that no court should appoint a receiver to collect municipal, bridge, suburban or road maintenance district taxes.

This act was construed by this court in the case of *Dickinson* v. *Mingea,* 191 Ark. 946, 88 S. W. (2d) 807. In that case we said: ''The chancery courts have not been deprived of their jurisdiction in regard to improvement districts, and neither act 46 nor act 79 manifests such intention. The provisions of these acts, even to their preamble, are identical except as to the designation of the kinds of improvement districts to which they respectively relate.

''There appears in the preamble to each of these acts the following paragraph: 'Whereas the collection officers provided by law can collect improvement district taxes more expeditiously and at less expense than receivers, if they are made to discharge their duties.' The significance of the phrase 'if they (the commissioners of the district) are made to discharge their duties' is not to be overlooked. The verb 'made' as here employed means to require or compel. But how are the commissioners to be 'made' to discharge their duties? Section 1, above quoted, answers 'by mandamus or by a mandatory injunction in equity.' There is, therefore, no abridgment of the court's jurisdiction. The commissioners would thereafter report to and be supervised by the court just as a receiver would be to the end that they were 'made' to discharge the duties imposed upon them by law. The receivers could do no more than to follow and be governed by the law.''

The constitutional provisions with reference to chancery courts' jurisdiction and power are discussed in the case of *Rodgers* v. *Carson Lake Road Improvement District No. 6,* 191 Ark. 112, 85 S. W. (2d) 716. The authorities are there collected and reviewed, and it would serve no useful purpose to review them again. In the case of *Dickinson* v. *Mingea, supra,* authorities are again reviewed, and it is held in that case that act 79 of the Acts of 1933 is valid.

The chancery court is not deprived of its jurisdiction, but the chancery court did not have power to ap-

point a receiver, the appointment being prohibited by act 79 of 1933. But the chancery court not only appointed a receiver contrary to the provisions of said act, but it allowed to Claude Williams, attorney, $100; to W. N. Ivie the sum of $100; to Henry Davis the sum of $100; and to Duty & Duty $100. These were all attorneys' fees in connection with the receivership. It also allowed the receiver $100. The appointment of the receiver being erroneous and in violation of act 79, it follows that the attorneys' fees and receiver's fee were improperly allowed.

If the chancery court could, in violation of act 79, appoint a receiver and allow fees to the receiver and to attorneys, it would be doing the very thing to prohibit which act 79 was passed. It was, therefore, error to allow these fees.

The act expressly provides that the commissioners may, by mandamus or by a mandatory injunction in equity, be compelled to do the things that the receiver in this case was appointed to do. The act was passed especially to prevent these expenses. The preamble of the act reads as follows:

"WHEREAS, abuses are prevalent in receiverships of municipal, bridge, suburban and road maintenance improvement districts, in the allowance of excessive fees to counsel for filing suits for receivers, the allowance of excessive fees to receivers, the appointment of unnecessary attorneys for receivers, and the allowance of excessive fees to them, all of which imposes an additional financial burden on the landowners of the districts, and

"WHEREAS, the collection officers provided by law can collect improvement district taxes more expeditiously and at less expense than receivers, if they are made to discharge their duties."

The chancery court found that the taxes for the years 1928, 1929, and 1931 had been paid, and that the taxes for 1930 and 1932 had not been paid, and directed that the $202.50 held by E. G. Sharp, receiver of the First National Bank, be applied to the taxes for 1933, 1934 and 1935. The court also found and decreed that

the receiver of the First National Bank was authorized to redeem the real estate upon the payment of the taxes for 1930 and 1932 in the amount of $67.50 each.

As to the issue between the district and the American National Bank in Rogers, Arkansas, the court held that the district had acquired the bonds pledged to the bank by using $3,062 of the money on hand belonging to the district, and by borrowing $9,340 from the bank, for which the district had executed its note.

The chancery court ordered that the bonds pledged to secure the payment of the note should be held in escrow until the further orders of the court.

The decree of the chancellor as to the bank's claim and the disposition of the bonds held by it is not against the preponderance of the evidence. This appeal is prosecuted to reverse the decree of the chancery court. A motion to dismiss the appeal was filed, which is overruled.

We do not deem it necessary to set out the evidence as to the Swofford claim, the claim of the bank, nor the evidence with reference to taxes due, since we have reached the conclusion that the chancellor's decree as to these was not against the preponderance of the evidence.

The decree of the chancery court is affirmed as to the taxes, the claim of the bank, and the claim of Swofford. In other respects the decree is reversed, and the cause remanded, with directions to enter a decree disallowing all claims in connection with the receivership.