**KERSH LAKE DRAINAGE DIST OF JEFFERSON, LINCOLN, AND DESHA COUNTIES, ARK., et al. v. STATE BANK & TRUST CO. OF WELLSTON, MO.**

No. 10879.

Circuit Court of Appeals, Eighth Circuit.

Nov. 23, 1937.

784

E. W. Brockman, of Pine Bluff, Ark., for appellants.

G. B. Rose, of Little Rock, Ark. (J. F. Loughborough, A. W. Dobyns, A. F. House, and J. W. Barron, all of Little Rock, Ark., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This case is a sequel to the case of Kersh Lake Drainage District v. State Bank & Trust Company, 85 F.(2d) 643 (C. C.A.8), in which a judgment against the drainage district in the sum of $54,655 was affirmed. This suit was brought to secure a mandatory injunction requiring the proper county officers of the three counties in which the district lies and the commissioners of the district to extend upon the tax books and to collect drainage taxes at the rate of 6½ per cent. upon the assessed benefits in the district each year until an amount sufficient to pay the judgment with all costs has been raised. The judgment was upon certificates of indebtedness bearing 6 per cent. interest issued by the drainage district in payment of the costs of constructing drainage improvements. Lillian Iddings, the owner of like certificates of indebtedness on which there was an unpaid balance of $6,060, intervened and prayed for the same relief. After a trial upon the merits, at which the facts were stipulated, a decree granting the relief

prayed was entered, and the drainage district appeals.

The appellant district was organized in the year 1912 under the general drainage laws of Arkansas of 1909 for the purpose of draining lands in Jefferson, Lincoln, and Desha counties. Pursuant to the statute then in effect, the lands within the district were assessed for benefits in the amount of $293,191.90, payable in installments over a period of years. This sum was arrived at under the law on the basis that the work of constructing the improvement would cost $135,000. The total sum included costs, interest, and incidentals. In 1915, a report of the commissioners of the district was approved, in which the cost was estimated to be $155,000; and in 1919 a second report was approved, in which it is shown that the actual cost was $181,500, for which amount certificates of indebtedness bearing 6 per cent. interest were issued. No subsequent order or judgment was entered modifying or increasing the assessment for benefits made in 1912.

The statute in effect when the district was organized (section 12 of Act 279 of 1909 (page 840) as amended by Act 136 of 1911 (page 109), section 3620 of Crawford & Moses' Digest) limited the taxpayers' liability to the amount of the assessed benefits without interest thereon. Notwithstanding this fact, there have already been levied and collected in the district taxes in the amount of $308,665.65, or 111.9 per cent. of the assessed benefits.

Upon this state of facts it is appellants' first contention that the assets out of which appellee's judgment may be paid are limited by the benefits assessed in 1912, and that since that limit has been reached and passed the lien upon the land has been discharged, and that no additional taxes may be imposed thereon.

It is appellee's contention that the deferred installments of the assessment for benefits bear interest at the rate of 6 per cent. a year, and that when such interest is computed the available assets are more than sufficient to satisfy its claim. It appears that the total of all taxes which have been levied and collected in the district is much less than the total of assessed benefits and interest upon unpaid installments since 1919.

The appellee, to support its proposition that the unpaid installments of assessed benefits bear interest, relies upon two amendments to the general drainage laws of 1909. The first of these amendments is Act 177, approved March 13, 1913 (section 3643, of Crawford & Moses' Digest), section 10 (page 746) of which provides:

"The amount of interest which will accrue on bonds issued by such districts and subdistricts shall be included and added to the tax, but the interest to accrue on account of the issuing of said bonds shall not be construed as a part of the cost of construction in determining whether or not the expenses and costs of making said improvements are or are not equal to or in excess of the benefits assessed.

"When assessments of benefits are made in drainage and other improvement districts, the landowners shall have the privilege of paying the same in full within thirty days after the assessment becomes final. But all such assessments shall be made payable in installments, so that not more than twenty-five per cent. shall be collectible in any one year against the wishes of the landowner and, in the event that any landowner avails himself of this indulgence, the deferred installments of the assessed benefits shall bear interest at the rate of six per cent. per annum, and shall be payable only in installments as levied. The levy of the assessment may be made by way of proportional amounts of the total assessed benefits, and interest need not be calculated until it is necessary to do so to avoid exceeding the total amount of benefits and interest."

The second amendment referred to is Act 467, approved March 28, 1919, p. 343 (section 3656, Crawford & Moses' Digest), which provides: "Where assessments of benefits have been made in drainage districts organized either under general or special acts, the property owner shall have the right to pay such assessments in full within sixty days after the passage of this act, but if he does not avail himself of this privilege, the assessment of benefits shall bear interest at the rate of six per cent. per annum, and shall be payable only in installments as levied. The interest need not be computed until necessary to be sure that the collections have not exceeded the total amount of benefits and interest; or the interest may be first collected."

The appellants contend that Act 177 and Act 467 have no application to the appellant district, because (1) they are not retroactive in effect; (2) to increase assessed benefits by adding interest violates

the Constitutions of Arkansas and of the United States; and (3) an action to increase the assessment of benefits by adding interest is an action to collect a delinquent tax and is barred by the statute of limitations.

Counsel for the respective parties have presented their contentions in this court with ability and much learning, but we do not think it necessary to review all the cases cited in their briefs. Upon their face the statutes of 1913 and 1919 make assessment for benefits in drainage districts in Arkansas payable in interest-bearing installments, and provide that the "interest need not be calculated until it is necessary to do so to avoid exceeding the total amount of benefits and interest." Strictly speaking, the question is not whether these amendments to the general drainage law of 1909 apply retroactively, but whether they apply prospectively so as to authorize the collection of interest from the date of their enactment upon deferred installments of benefits assessed under the previously existing law. It is apparent that the commissioners of the appellant district regarded these amendments as applicable, because after the first one had been enacted they secured approval of increased costs of construction and issued the certificates of indebtedness involved herein bearing interest without securing an increased assessment. They cannot be presumed to have intended to defraud the holders of the certificates. In fact, the language of the amendments gives no indication that their effect is to be limited to districts which are to be created in the future. On the contrary the act of 1913 provides that "the landowners shall have the privilege of paying the same [assessment of benefits] in full within thirty days after the assessments become final," but that "all such assessments shall be made payable in installments," and that "deferred installments of the assessed benefits shall bear interest at the rate of six per cent. per annum." Likewise, the act of 1919 provides that the landowners may avoid paying interest by paying the assessments for benefits "in full within sixty days after the passage of this act." This statute seems clearly to be directed to districts already in existence.

No decision of the Supreme Court of Arkansas applying these particular statutes to drainage districts organized before they took effect has been called to our attention, and we have found none. Analogous statutes of the state have been construed by that court, and the decisions leave no doubt as to that court's views. In Chicago Mill & Lumber Co. v. Drainage District No. 17, 172 Ark. 1059, 291 S.W. 810, 812, a taxpayer was appealing from a judgment increasing taxes in a district organized under a special statute of 1917 (Acts 1917, p. 485). This statute, like the general act in force in 1912, did not provide for interest upon unpaid installments of the assessed benefits. By an amendment enacted in 1920, Ex.Sess., No. 305, p. 2585 (the terms of which are not set forth in the opinion), benefits were made to bear interest at 6 per cent. In response to appellant's contention that interest could not properly be added to the assessed benefits, the court said: "If it be true, as contended by counsel for appellant, that the original act did not so provide, the amendatory act very clearly did, and as has been frequently decided, this is a matter wholly within the control of the General Assembly."

In Benton v. Nowlin, 187 Ark. 738, 62 S.W.(2d) 16, an amendment authorizing a street improvement district to charge interest upon assessed benefits was held applicable to a district created prior to the amendment.

Appellants cite Pfeiffer v. Bertig, 141 Ark. 531, 217 S.W. 791, for the proposition that the amendment of 1913 does not apply to previously organized districts. That case involved a subsidiary district organized under the law of April 20, 1911 (Sp. & Priv.Acts 1911, p. 533), which law provided that such districts should be governed by the general act of 1909 "and amendments thereto." The act of 1913 was an amendment to the act of 1909, but the court held in the Bertig Case that the act of 1913 did not apply to subsidiary districts because the language "and amendments thereto" referred only to amendments in existence on April 20, 1911. The Bertig Case held the amendment of 1913 inapplicable because it was not intended to apply to subsidiary districts, rather than because it was not intended to apply to already existing districts.

If under the Bertig Case, supra, the act of 1913 cannot be said to apply to the instant case, we are of the opinion that the act of 1919 does apply; and it is unnecessary for us to consider whether or not interest can be charged upon deferred installments beginning in 1913 because interest upon the unpaid installments since

1919 will provide a basis for taxes largely in excess of appellee's judgment.

██ The contention that a construction of the amendments which permits the addition of 6 per cent. interest to the original assessed benefits would be repugnant to the Constitutions of the state of Arkansas and of the United States is without merit. That the amendments so construed are valid under the Constitution of Arkansas cannot be doubted, in view of the decisions of the Supreme Court of that state in the cases of Skillern v. White Levee District, 139 Ark. 4, 212 S.W. 90; Chicago Mill & Lumber Co. v. Drainage District No. 17, supra; and Benton v. Nowlin, supra. Neither can it be said that the taxes are so arbitrary and unreasonable as to amount, to an abuse of power by the Legislature of Arkansas in violation of the Fourteenth Amendment to the Constitution of the United States. Roberts v. Richland District, 289 U.S. 71, 53 S.Ct. 519, 77 L.Ed. 1038; League v. Texas, 184 U.S. 156, 22 S.Ct. 475, 46 L.Ed. 478.

██ It is further contended that the right to collect interest on deferred installments of benefits is barred by the statute of limitations (Section 4, Act 534 of 1921, p. 576), which provides that: "No suit for the collection of such delinquent taxes shall be brought after three years from date same became delinquent."

It is difficult to understand the argument of appellants' counsel upon this point. It is evident that a tax cannot be delinquent until it has been made payable by some lawful procedure by the proper officials under the taxing laws of the state. Both amendments providing for interest upon deferred installments of assessed benefits in drainage districts involved in this case say that interest need not be calculated (Act 177) or computed (Act 279) until it becomes necessary to avoid exceeding the total amount of benefits and interest. Counsel for appellants says in his brief that: "The board of commissioners have never at any time taken steps either by resolution or by court order to have interest computed and made a part of the benefits." It would seem, therefore, that until the commissioners have complied with the decree in this case the statute of limitations would have no application. But, counsel says, "When it becomes evident that the cost of the improvement will exceed the assessed value of benefits the statute began to run. * * *" The authorities cited in support of this proposition are not in point. The right to collect interest is not lost under the statutes by failure to compute it in advance and add it to the installment of assessments. Jones v. Fletcher, 132 Ark. 328, 200 S.W. 1034, 1036. It must be held, consequently, that the statute of limitations is not applicable.

Other questions incidental and subordinate to the points determined above are discussed in the briefs, but in the view we take of the controlling facts and issues they become immaterial.

The decree appealed from is affirmed.